221 N.J. Super. 278 (1987)
534 A.2d 417
RENEE IAFELICE, AN INFANT BY HER GUARDIAN AD LITEM, ANTHONY IAFELICE, ANTHONY IAFELICE, INDIVIDUALLY AND MADONNA IAFELICE, PLAINTIFFS-APPELLANTS,
v.
ILANA W. ZARAFU, M.D., NEWARK BETH ISRAEL MEDICAL CENTER, PO-I TSENG, M.D., NICOLE COHEN-ADDAD, M.D., ABBOTT J. KRIEGER, M.D., EDWARD ANTONIO, M.D., ANTHONY EMANUEL, M.D. AND TELLY DE MESA, M.D., DEFENDANTS-RESPONDENTS, AND SAUL M. LUCHS, M.D., RICHARD MANSFIELD, M.D., SARVESH K. NIGAM, M.D., JOYCE CHUACHINGO, JOHN OR JANE CALABRESE, FIRST NAME FICTITIOUS, PALISADES GENERAL HOSPITAL, ISABEL LISA, R.N., DORAIKANNU BALAKUMAR, M.D., SAYED M.K. UDDIN, M.D., PALISADES ANESTHESIA GROUP, P.A., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 1987.
Decided November 23, 1987.
*279 Before Judges ANTELL, DEIGHAN and COHEN.
Keith O. Evans argued the cause for appellants (Marcus and Evans, attorneys; Keith O. Evans, on the brief).
Thomas F. Campion argued the cause for respondent Zarafu (Shanley & Fisher, attorneys; Thomas F. Campion, Joan S. Antokol and William D. Sanders, on the brief.
William H. Michelson argued the cause for respondents Newark Beth Israel Medical Center, Po-I Tseng and Nicole Cohen-Addad; (Feuerstein, Sachs, Maitlin & Fleming, attorneys; William H. Michelson, on the brief).
William S. Mezzomo argued the cause for respondents Krieger, Antonio, Emanuel and de Mesa (McDonough, Murray & Korn, attorneys; Peter L. Korn, of counsel; William S. Mezzomon, on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
*280 Anthony Iafelice and Madonna Iafelice are the parents of Renee Iafelice, who was born prematurely on October 2, 1980. The infant suffered catastrophic brain damage at birth as the result of an interventricular hemorrhage and hydrocephalus so that she now functions at the level of a four-month old infant who will require permanent institutional care.
Approximately five weeks after Renee's birth a ventriculoperitoneal shunt was surgically inserted to drain fluids from the child's cranial vault to the abdomen. The operation was successful and this suit was brought to recover for the "wrongful life" of the child and the cost of caring for her in her state of total disability. Plaintiffs were informed that the procedure was essential to the baby's survival, and it was performed with their written consent.
Plaintiffs now appeal from an order for summary judgment dated September 5, 1985 in favor of defendants-respondents and an order dated March 17, 1986 denying plaintiffs' motion to vacate the earlier order. We affirm substantially for the reasons stated by Judge Young in his formal written opinion dated August 6, 1985, published at 206 N.J. Super. 103 (Law Div. 1985), and his letter opinion of February 18, 1986. We add only the following brief comments.
This medical malpractice action is crucially dependent on the validity of plaintiffs' claim that the baby's attending physician breached her duty to inform plaintiffs that prospects for the child's future intellectual and neurologic function had been severely compromised and that plaintiffs were therefore free to withhold their consent to the operation. They further assert that had they been so advised they would have withheld such consent and allowed the baby to die.
Plaintiffs' theory of recovery is that the shunt was implanted without their informed consent. "Informed consent is a negligence concept predicated on the duty of a physician to disclose to a patient information that will enable him to `evaluate *281 knowledgeably the options available and the risks attendant upon each' before subjecting that patient to a course of treatment." Perna v. Pirozzi, 92 N.J. 446, 459 (1983), quoting Canterbury v. Spence, 464 F.2d 772, 780 (D.C. Cir.), cert. den., 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972).
Under the doctrine, the patient who consents to an operation is given the opportunity to show that the surgeon withheld information concerning "the inherent and potential hazards of the proposed treatment, the alternatives to that treatment, if any, and the results likely if the patient remains untreated." [92 N.J. at 460. Emphasis supplied].
The mistaken premise of this appeal is that allowing the child to die untreated was a legally viable alternative. It rests upon the report of plaintiffs' medical expert that intracerebral bleeding involving brain tissue on the 27th day of life was "ominous and bode[d] an extremely poor prognosis in terms of future intellectual and neurologic functioning of the infant." But nothing in the record suggests that a doctor should have been able to foretell the full dramatic extent of Renee's eventual disability, and we find no support for the belief that a newborn child may be put to death through benign neglect on the mere expectation that she will, in some unquantified way, be a defective person. As the Supreme Court wrote in Berman v. Allan, 80 N.J. 421, 430 (1979), "It is life itself that is jealously safeguarded, not life in a perfect state."
Termination of Renee's life would not have been legally justified, and, as the hospital staff advised them, had plaintiffs not consented to the operation the hospital would have applied for court approval thereof. Since death would assuredly have followed from the withholding of treatment, such an order would have been mandated. See John F. Kennedy Memorial Hospital v. Heston, 58 N.J. 576, 583 (1971).
Although mentioned only tangentially by plaintiffs in their reply brief, we have examined the recent decisions of the Supreme Court in Matter of Jobes, 108 N.J. 394 (1987), Matter of Peter by Johanning, 108 N.J. 365 (1987) and Matter of Farrell, 108 N.J. 335 (1987), which furnish guidelines for the *282 removal of life-support systems for adults suffering from incurable and irreversible vegetative states. Whatever light these may shed in future cases, they have no relevance in determining the extent of a doctor's duty to inform in connection with contemplated surgical intervention as a matter of accepted and standard medical practice at the time of Renee's birth in 1980.
Affirmed.